**NIPPON MINIATURE BEARING CORPORATION, Plaintiff–Appellant,**

**v.**

**George J. WEISE, Commissioner of the United States Customs Service; United States Customs Service, Defendants–Appellees.**

**No. 97–55930.**

United States Court of Appeals, Ninth Circuit.

Argued and Submitted Feb. 4, 1999

Filed Oct. 27, 2000

Glenn W. Trost, Esq., Los Angeles, California, for the appellant.

Carol L. Wallack, Trial Attorney, United States Department of Justice (David M. Cohen, Director, Commercial Litigation Branch, United States Department of Justice, on the briefs), Washington, D.C., for the appellees.

Before: BRUNETTI, MAGILL,[1] and McKEOWN, Circuit Judges.

Opinion by Judge BRUNETTI; Partial Concurrence and Partial Dissent by Judge McKEOWN.

BRUNETTI, Circuit Judge:

This appeal raises the issue of whether the Court of International Trade ("CIT") has exclusive jurisdiction to entertain claims brought by an importer challenging the legality of forfeiture and penalty assessment actions taken by the United States Customs Service ("Customs"). Nippon Miniature Bearing Corporation ("NMB") brought action in the district court for declaratory and injunctive relief, claiming that Customs acted outside the scope of its authority when it seized NMB's goods and initiated administrative penalty proceedings under Section 592 of the Tariff Act, 19 U.S.C. § 1592, and that such actions violated NMB's constitutional rights. The district court granted Customs' motion to dismiss for lack of subject matter jurisdiction finding that NMB's claims fell within the exclusive subject matter jurisdiction of the Court of International Trade ("CIT"). NMB now appeals. We have jurisdiction under 28 U.S.C. § 1291, and we affirm in part, reverse in part, and remand for further proceedings consistent with this opinion.

## I.

NMB is an importer of miniature steel ball bearings. From 1986 to 1989, NMB imported into the United States ball bearings that were comprised of a steel alloy which its parent company, Minebea, had developed. These bearings were described in Customs entry documentation with parts numbers bearing the prefix "SS." Customs avers that the designation "SS" is used in the steel industry to indicate that a product is made of 440C stainless steel.

In the mid–1980s, Customs began an investigation into NMB's importation practices. It concluded that by using the prefix "SS" in its parts number, NMB was implicitly representing that the ball bearings were made of 440C stainless steel when in fact the ball bearings were of a different chemical component. Customs determined that this labeling of the ball bearings constituted a material misrepresentation and that it was therefore illegal to import such items into the United States.[2] Customs found that the importation of such items was actionable under 15 U.S.C. § 1523 and 19 C.F.R. § 11.13. As a result of this investigation, Customs in 1989 seized, pursuant to 18 U.S.C. § 545 and 19 U.S.C. § 1595a(c), nineteen shipments of ball bearings that were being entered into Los Angeles by NMB.

---

1. Hon. Frank J. Magill, Senior United States Circuit Judge for the Eighth Circuit Court of Appeals, sitting by designation.

2. 18 U.S.C. § 1592 prohibits the introduction of "any merchandise into the commerce of the United State by means of any document ... which is material and false." 18 U.S.C. § 1592(a). The Lanham Act, 15 U.S.C. § 1125, further proscribes the importation of any goods that are labeled in a manner which violates the provisions of the Act. Customs is authorized to seize illegally imported goods pursuant to 18 U.S.C. § 545 (goods imported "contrary to law" are subject to seizure and forfeiture) and 19 U.S.C. § 1595(c) (to prevent introduction of prohibited merchandise, Customs service can seize such goods).

In order to obtain the return of its merchandise, NMB sought a quick release of the seized goods. Customs granted the release on the condition that NMB provide substitute letters of credit which NMB agreed would serve as a substitute *res* in any forfeiture proceeding. NMB also submitted a petition for remission of the forfeiture. After considering NMB's petition, Customs offered to remit the forfeiture upon NMB's payment of $1,015,930.00 which it found to equal the dutiable value of the seized ball bearings. NMB filed a supplemental petition for remission which Customs denied.

NMB then paid the penalty imposed. The parties disagree as to whether this payment was made "without protest." NMB first submitted the payment with a cover letter that stated that the payment was being made under protest. When Customs informed NMB's counsel that it would not accept any payment under protest, NMB submitted the payment under a cover letter from which the objectionable term had been deleted and Customs returned the letters of credit. NMB contends, however, that it never agreed to forego its right to seek judicial remedies in regard to the payment.

Pursuant to its investigation, Customs determined that, in addition to the shipments seized, NMB had imported approximately 926 additional shipments of ball bearings which NMB had identified as being composed of 440C stainless steal but were in fact made of a different alloy. In October 1989, Customs issued pre-penalty notices to NMB and Minebea advising that Customs was considering issuing penalties against them pursuant to 19 U.S.C. § 1592, for falsely describing the goods imported in the 926 other entries. After considering written responses to the pre-penalty notices submitted by NMB and Minebea and conducting a further investigation, Customs determined that NMB and Minebea had violated § 1592. Customs then issued notices of penalties to both parties.

In June 1994, NMB and Minebea filed a petition explaining why they should not be penalized for the alleged violation. After considering the petition, Customs decided not to mitigate the penalties and Customs so informed NMB and Minebea. NMB and Minebea filed a supplemental petition which Customs also rejected.

On December 17, 1996, NMB filed an action against Customs in the District Court for the Central District of California. NMB claimed that Customs had violated its due process and free speech rights protected by the United States Constitution by subjecting its goods to forfeiture and by initiating administrative penalty proceedings against it. NMB further asserted that Customs' actions were arbitrary, capricious, and outside of its statutory and regulatory authority. In this action, NMB sought: "(1) a declaration that the penalty proceedings instituted against NMB be found unlawful and set aside; (2) injunctions enjoining further penalty proceedings against NMB; and (3) injunctions ordering Customs to return NMB's seized property."

After NMB and Minebea failed to pay the civil penalties assessed against them by Customs, Customs referred the matter to the Department of Justice ("DOJ"). On December 23, 1996, the DOJ, on behalf of the United States, filed an action against NMB and Minebea in the CIT.

On April 14, 1997, Customs filed a motion to dismiss NMB's district court action based on a lack of subject matter jurisdiction, or in the alternative, for failure to state a claim upon which relief could be granted. On May 12, 1997, the district court held a hearing on Customs' motion. Finding that all of NMB's claims were within the exclusive jurisdiction of the CIT, the district court granted Customs' motion to dismiss for lack of subject matter jurisdiction. This appeal followed.

## II.

■ This court reviews de novo a district court's determination that it lacks

subject matter jurisdiction. *Pentax Corp. v. Myhra*, 72 F.3d 708, 710 (9th Cir.1995).

■ NMB seeks in this action to challenge the legality of Customs forfeiture and administrative penalty proceedings. It bases its challenges on both constitutional and statutory grounds. The general federal-question provision, 28 U.S.C. § 1331, would generally give the district court jurisdiction to hear such challenges provided that the government had waived its sovereign immunity with regard to these claims. *K mart Corp. v. Cartier*, 485 U.S. 176, 182, 108 S.Ct. 950, 99 L.Ed.2d 151 (1988). "The District Court would be divested of jurisdiction, however, if this action fell within one of several specific grants of exclusive jurisdiction to the Court of International Trade." *Id.* at 182–83, 108 S.Ct. 950. The government claims that 28 U.S.C. §§ 1582 and 1583 provide the CIT with exclusive jurisdiction over its penalty assessment proceedings and that NMB had waived the right to judicial review of Customs' seizure action. The district court found that the claims fell within the exclusive jurisdiction of the CIT and that it therefore lacked subject matter jurisdiction. In its decision, however, the district court did not distinguish between the two separate customs actions that were the subject of NMB's cause of action. Because the statutory authority and judicial review process for the forfeiture and penalty assessment actions are separate and distinct, the determination of where jurisdiction lies to review the actions must be analyzed separately. The district court erred in failing to distinguish between the two causes of action.

### A.

Section 1582 provides the CIT with exclusive jurisdiction over civil enforcement claims brought by the United States. Specifically, § 1582 states:

> The Court of International Trade shall have exclusive jurisdiction of any civil action which arises out of an import transaction and which is commenced by the United States:

> (1) to recover a civil penalty under section 592, 593A, 641(b)(6), 641(d)(2)(A), 704(i)(2), or 734(i)(2) of the Tariff Act of 1930;

> (2) to recover upon a bond relating to the importation of merchandise required by laws of the United States or by the Secretary of the Treasury; or

> (3) to recover customs duties.

28 U.S.C. § 1582. Section 1583 further provides that "[i]n any civil action in the Court of International Trade, the court shall have exclusive jurisdiction to render judgment upon any counterclaim, cross-claim or third party action of any party if ... such claim or action involves the imported merchandise that is the subject matter of the civil action...." 28 U.S.C. § 1583. The government posits that, pursuant to this statutory scheme, the CIT has exclusive jurisdiction to hear all claims arising from Customs' enforcement of Section 1592.

■ NMB avers that this interpretation of the ambit of CIT's jurisdiction is contravened by the Federal Circuit's decision in *Trayco, Inc. v. United States*, 994 F.2d 832 (Fed.Cir.1993) and the analysis set forth in *K mart*, 485 U.S. 176, 108 S.Ct. 950, 99 L.Ed.2d 151. Both *Trayco* and *K mart* stand for the proposition that the CIT does not have exclusive jurisdiction over all challenges to customs-related laws and regulations. *See Trayco*, 994 F.2d at 836–37; *K mart*, 485 U.S. at 188, 108 S.Ct. 950. Neither case, however, answers the precise question at bar, i.e., whether a district court has jurisdiction to entertain suits challenging a Customs pre-enforcement penalty assessment determination.

*Trayco* involved an action brought by an importer for a refund of a penalty imposed by Customs pursuant to § 1592(a). On appeal the government argued that "Congress intended, by the detailed and comprehensive statutory scheme of the Customs Court Act of 1980, to vest exclusive jurisdiction in the Court of International Trade for actions, like the instant one, that involve disputes regarding penalties aris-

ing from the importation of mislabeled items." *Id.* at 835–36. Relying on the plain language of the statute the Federal Circuit rejected this argument, stating:

> Section 1582 of Title 28 grants exclusive jurisdiction to the Court of International Trade over civil actions arising out of import transactions commenced by the United States. Trayco's action against the government meets two of the three jurisdictional requirements of section 1582:(1) it is a civil action; (2) arising out of an import transaction. The United States, however, did not commence this lawsuit in the district court. We reject the government's argument that no jurisdictional gap exists because Congress failed in section 1582 to explicitly grant the Court of International Trade jurisdiction of civil actions arising out of import transactions commenced by an importer.

994 F.2d at 836–37.

The Court acknowledged that under the statutory scheme, the importer could have "obtained judicial review in the Court of International Trade by refusing to pay the penalty and waiting for the government to commence an enforcement action." *Id.* at 837. It found, however, that the statutory framework did not require such a course of action. Pursuant to the Tucker Act, 28 U.S.C. § 1346(a)(2), a federal district court has jurisdiction to hear an action for reimbursement of a penalty illegally assessed by Customs where the importer asserts a substantive right enforceable against the United States for money damages. Because "[t]he refund of a penalty improperly exacted pursuant to an Act of Congress is a substantive right for money damages," the Court found that the importer "met the jurisdictional prerequisites of section 1346(a)(2)" and the district court properly exercised jurisdiction. *Id.* at 837–38.

■ The Federal Circuit's interpretation of the ambit of the CIT's exclusive jurisdiction under § 1582 supports NMB's assertion that the CIT would not have jurisdiction to hear a pre-enforcement challenge to a Customs penalty assessment brought by an importer. The *Trayco* opinion, however, does not support the NMB's conclusion that therefore the district court has jurisdiction to hear such a challenge. In finding that jurisdiction over the refund claim lay in the district court, the Federal Circuit relied not on general federal jurisdiction, but rather on the Tucker Act. Because NMB, in challenging the penalty assessment determination, does not seek recovery of a penalty paid or money damages against the United States, the district court was without jurisdiction to hear this suit under the Tucker Act.

NMB's reliance on the Supreme Court's analysis of the ambit of the CIT's exclusive jurisdiction in *K mart* is also misplaced. In *K mart*, an association of trademark owners brought an action in district court challenging the validity of a Customs regulation which permitted importation of certain gray-market goods.[3] 485 U.S. at 181, 108 S.Ct. 950. The Supreme Court held that because the challenge did not fall within one of the specific grants of exclusive jurisdiction to the CIT, the District Court had jurisdiction to hear a challenge to the regulation pursuant to 28 U.S.C. §§ 1331 and 1338(a).[4] *Id.* at 189–91, 108 S.Ct. 950. The Supreme Court, however, did not comment upon the ambit of the CIT's exclusive jurisdiction over civil penalty assessment actions nor does the analy-

---

**3.** "A 'gray-market' good is a foreign manufactured good bearing a valid United States trademark, which is imported without the consent of the United States trademark owner." *K mart,* 485 U.S. at 178, 108 S.Ct. 950. The importation of gray-market goods is generally prohibited by § 526(a) of the 1930 Tariff Act and § 42 of the Lanham Trade–Mark Act, 15 U.S.C. § 1124, which prohibits the importation of goods bearing marks that "copy or simulate" United States trademarks.

**4.** Section 1338(a) provides that "[t]he district court shall have original jurisdiction of any civil action arising under any Act of Congress relating to patents, plant variety protection, copyrights and trademarks." 28 U.S.C. § 1338(a).

sis set forth support the conclusion that an importer has a right to pre-enforcement review of such assessment actions. Rather, *K mart* instructs that the determination of where jurisdiction lies to hear a suit involving challenges to import regulations turns on the precise contours of the exclusive jurisdiction provided to the CIT as well as the claimed basis for the district court's jurisdiction.

■ At first blush, it appears that a case like the one at bar, involving a challenge to a pre-enforcement penalty assessment determination would fall squarely into the jurisdictional gap created by the CIT statutory grant of exclusive jurisdiction, as did the importer challenges in *Trayco* and *K mart.* This case, however, does not require consideration of whether residual subject matter jurisdiction might exist in the district court under §§ 1582 and 1583. As a practical matter, the district court lacks jurisdiction to decide an importer's challenge to a pre-enforcement assessment because the case is not ripe for review under the APA. Section 704 of the APA provides that only "[a]gency action made reviewable by statute and final agency action for which there is no other adequate remedy in a court, are subject to review." 5 U.S.C. § 704; *see also Bowen v. Massachusetts,* 487 U.S. 879, 901–903, 108 S.Ct. 2722, 101 L.Ed.2d 749 (1988); *Tucson Airport,* 136 F.3d 641, 645 (9th Cir.1998). NMB can point to no statute which provides for review of an importer initiated challenge to a pre-enforcement penalty assessment. Thus, the agency action complained of here is only reviewable under the APA if it constitutes "final agency action," for which there is no other adequate remedy in a court.

■ In order for an agency action to be deemed final at least two conditions must exist. "First, the action must mark the consummation of the agency's decision-making process—it must not be of a merely tentative or interlocutory nature. And second, the action must be one by which rights or obligations have been determined, or from which legal consequences

flow." *Bennett v. Spear,* 520 U.S. 154, 117 S.Ct. 1154, 1168, 137 L.Ed.2d 281 (1997) (internal citations and quotation marks deleted). Although NMB is correct in asserting that the first requirement is met here, we find that the second requirement is not met and therefore review is not provided under the APA.

Customs' assessment of penalties pursuant to 19 U.S.C. § 1592 does not constitute a final agency action because it does not determine the rights or obligations of an importer, nor are there legal consequences flowing from the administrative determination that a penalty is owed. During the administrative review stages of a penalty assessment action, an importer is under no obligation to pay an assessed penalty. Such an obligation only arises after the CIT conducts a de novo review of all issues in a government initiated enforcement proceeding and determines whether a penalty is due and the amount of any such penalty. *See* 19 U.S.C. § 1592(e) (providing for de novo review by the CIT of all issues in a proceeding commenced by the United States for the recovery of any monetary penalty claimed under § 1592); 28 U.S.C. § 1582; *see also Playhouse Import & Export, Inc. v. United States,* 843 F.Supp. 716, 720 (C.I.T.1994) (noting that, prior to a government initiated enforcement proceeding, an importer does not suffer a cognizable injury as a result of an administrative penalty assessment determination). As there are no legal consequences resulting from a Customs penalty assessment determination, there is no "final agency action" and 28 U.S.C. § 1331 and § 704 of the APA do not vest the district court with jurisdiction to review the penalty assessment.

■ A review of jurisdictional provisions of the Customs Court Act of 1980 also persuades us that this is not the type of agency action for which Congress intended to permit pre-enforcement review in a district court. *Cf. Abbott Laboratories v. Gardner,* 387 U.S. 136, 87 S.Ct. 1507, 18 L.Ed.2d 681 (1966). In enacting the juris-

dictional provisions, "Congress intended, first and foremost, to remedy the confusion over the division of jurisdiction between the Customs Court (now the Court of International Trade) and the district courts and to 'ensure . . . uniformity in the judicial decisionmaking process.'" *K mart*, 485 U.S. at 188, 108 S.Ct. 950 (citing H.R.Rep. No. 96–1235, p. 20 (1980)). To achieve uniformity, Congress delineated precisely the customs-related matters over which the CIT would have exclusive jurisdiction. *Id.* Congress granted the CIT exclusive jurisdiction over government initiated penalty enforcement proceedings and, once such a suit is commenced, over all counterclaims, cross-claims, or third-party actions involving the imported merchandise which is the subject matter of the enforcement proceedings. 28 U.S.C. §§ 1582 & 1583. Moreover, Congress provided the CIT with "all the powers in law and equity of, or as conferred by statute upon, a district court of the United States," 28 U.S.C. § 1585, and thereby vested the CIT with the authority to grant an aggrieved party properly before it any relief deemed necessary. Therefore, Congress provided for exclusive jurisdiction in the CIT for review of a Customs penalty assessment determination and for all counterclaims arising out of such agency activity. We find that the comprehensive jurisdictional review procedures provided by Congress for such penalty assessment determinations provide an adequate remedy in a federal court and, therefore, a district court does not have jurisdiction to review claims challenging pre-enforcement penalty assessments. *See Bowen v. Massachusetts*, 487 U.S. 879, 902–905, 108 S.Ct. 2722, 101 L.Ed.2d 749 (1988); *cf. Trayco*, 994 F.2d at 836 (finding that there exists a gap in the CIT's exclusive jurisdiction for an action brought by an importer for a refund of an illegally exacted penalty because the CIT does not possess jurisdiction to hear such claims).

### B.

On appeal the government acknowledges that the district court erred in finding that jurisdiction over NMB's claims regarding the legality of the forfeiture proceedings rests within the exclusive jurisdiction of the CIT. The jurisdictional review provisions of the Customs Act provide for judicial review of seizure and forfeiture actions in the district court. *See* 19 U.S.C. §§ 1604, 1607, & 1608. Moreover, 19 U.S.C. § 1583 provides that the CIT's exclusive jurisdiction over an importer's counterclaims only extends to claims involving the merchandise which was subject to the § 1592 penalty assessment. Because Customs did not attempt to assess a penalty pursuant to § 1592 for the nineteen entries seized, the CIT would not have jurisdiction to entertain a claim involving the seized entries under § 1583.

The government avers, however, that the district court properly found that it lacked jurisdiction to consider the NMB's challenge to Customs seizure and forfeiture proceedings because NMB, by pursuing administrative relief rather than seeking judicial review of Customs seizure action and by voluntarily paying the amount set forth in Customs' remission decision without protest, waived its right to judicial review of the Customs actions regarding the nineteen seized shipments.

█ The issue of whether NMB waived its right to judicial review turns on factual determinations regarding the nature of the payment remitted to Customs. *See Trayco*, 994 F.2d at 839 (finding that an importer who pays a penalty under protest in order to pursue administrative remedies does not forego its right to challenge in a judicial proceedings the legality of the underlying penalty). A review of the transcript of the district court's oral opinion indicates that it incorrectly found that all of NMB's claims fell within the ambit of the CIT's exclusive jurisdiction. It did not consider the government's argument that NMB had waived the right to any judicial review of the forfeiture proceedings nor did it make any factual determinations regarding whether NMB remitted payment under protest. Because the district court

based its decision that it lacked jurisdiction to hear NMB's challenges to the forfeiture action on an erroneous interpretation of the applicable laws and it failed to make the requisite factual determinations, we remand the case to the district court for further proceedings regarding the nature of the payment remitted by NMB and the availability of judicial review of Customs forfeiture actions.

## III.

The district court correctly determined that it lacked jurisdiction to entertain an importer initiated pre-enforcement challenge to a Customs' penalty assessment arising out of the importation of mislabeled goods. Because a Customs' penalty assessment determination is not a final agency action within the meaning of § 704 of the APA, NMB's claims regarding the legality of Customs' administrative penalty proceedings involving the 926 allegedly mislabeled entries do not fall within the ambit of the APA's waiver of sovereign immunity and therefore the district court lacked jurisdiction to hear these claims.

The district court erred, however, in failing to analyze separately whether it had jurisdiction to hear NMB's challenges to the legality of Customs' 1989 seizure of the nineteen entries. Because the resolution of the issue of whether NMB waived its right to seek judicial review of the forfeiture actions turns on factual determinations which the district court failed to consider, we remand the case for further proceedings consistent with this opinion.

**AFFIRMED IN PART, REVERSED IN PART, AND REMANDED.**

Each party shall bear its own costs. McKEOWN, Circuit Judge, concurring in part and dissenting in part:

I join Part III of the majority's decision, namely that the district court should have analyzed separately its jurisdiction to hear challenges to the 1989 seizure of the nineteen entries, and that therefore the case must be remanded.

I part company with the majority, however, in its analysis of the 926 entries.

Like the majority, I would uphold the district court's dismissal of Nippon Miniature Bearing Corporation's ("NMB") statutory claims, but I would do so on slightly different grounds. For the reasons discussed below, I would acknowledge that it was proper to invoke federal question jurisdiction under 28 U.S.C. § 1331. That being said, I agree with the majority that because the United States Customs Service's decision was not "final" under the Administrative Procedure Act ("APA"), *see* 5 U.S.C. § 704, sovereign immunity was not waived and the district court lacked jurisdiction over the APA claims. *See Gallo Cattle Co. v. United States Dep't of Agric.,* 159 F.3d 1194, 1200 (9th Cir.1998) (holding no jurisdiction in absence of "final agency action"). Thus, I concur that NMB's statutory claims were properly dismissed.

In my view, we should analyze NMB's constitutional claims separate from its statutory claims. The majority's analysis that the case is "not ripe for review under the APA" leaves unresolved whether the district court has jurisdiction to hear NMB's constitutional claims. It skips over this threshold jurisdictional question and instead considers the limitations to suit imposed by the APA-limitations that do not apply to NMB's constitutional claims because no waiver of sovereign immunity is required in a suit for injunctive relief against an individually-named government official for allegedly unconstitutional conduct. *See Larson v. Domestic & Foreign Commerce Corp.,* 337 U.S. 682, 690–91, 69 S.Ct. 1457, 93 L.Ed. 1628 (1949); *United States v. Yakima Tribal Court,* 806 F.2d 853, 859–60 (9th Cir.1986) (citing *Larson;* treating constitutional claims differently from claimed violations of regulations because the former require no waiver of sovereign immunity). I respectfully dissent on this issue because the district court does have jurisdiction over the constitutional claims.

The threshold issue in this appeal, and the issue briefed by the parties, is whether the district court has subject matter juris-

diction over NMB's challenge to penalty proceedings initiated by the Customs Service against NMB. NMB sought declaratory and injunctive relief, based on claimed violations of its rights under the Constitution and federal customs statutes. These claims clearly raise a "federal question" under 28 U.S.C. § 1331 and give the district court jurisdiction to hear NMB's claims, absent some other statute that divests the district court of jurisdiction. The only statute that might do so here is 28 U.S.C. § 1582, which grants exclusive jurisdiction to the Court of International Trade ("CIT")-and therefore divests the district courts of jurisdiction-but only under limited circumstances. Section 1582 provides in relevant part:

> The Court of International Trade shall have exclusive jurisdiction of any civil action which arises out of an import transaction and which is *commenced by the United States*
>
> *(1) to recover a civil penalty under section 592 ... of the Tariff Act of 1930 [codified at 19 U.S.C. 1592] ...*

28 U.S.C. § 1582 (emphasis added). Importantly, this statute does not give the CIT exclusive jurisdiction over all import penalty actions, but rather, only those "commenced by the United States."

Here, the district court held that it lacked jurisdiction because "congressional intent was to place jurisdiction within the CIT." In so holding, the district court appears to have assumed that Congress intended to delegate *all* customs-related matters to the CIT. As the district court judge explained in his oral decision,

> [T]here is no real case authority that puts the matter squarely before this district court. The Court of International Trade apparently, by all appearances, have clear jurisdiction in this area. It seems to me that the congressional intent was to place jurisdiction within the CIT.

> \* \* \*

I've become fast friends with two of the members of CIT, and whenever we get together we discuss between ourselves— I say discuss rather than argue—as to the jurisdictional areas of each of the courts.

I choose to challenge them in jest only, because I clearly recognize the congressional intent in creating the separate statutes, and I clearly recognize the general jurisdiction of the Court of International Trade in this area, as between your case and their authority. As I said at the start of this motion, it seems to me it's quite clear that this particular court, under your given scenario, lacks jurisdiction. The Court of International Trade appears to me to have clear jurisdiction in this area. So therefore, I will grant the government's motion to dismiss for lack of subject matter jurisdiction.

The Supreme Court squarely rejected this view. In *K mart Corp. v. Cartier, Inc.*, 485 U.S. 176, 108 S.Ct. 950, 99 L.Ed.2d 151 (1988), the Court held that Congress did not imbue the CIT with exclusive jurisdiction over all customs-related controversies. As the Court noted, "Congress did not commit to the Court of International Trade's exclusive jurisdiction *every* suit against the Government challenging customs-related laws and regulations." *Id.* at 188, 108 S.Ct. 950; *see also Trayco, Inc. v. United States,* 994 F.2d 832, 836 (Fed.Cir. 1993) (concluding that the CIT does not have exclusive jurisdiction over customs actions and that "a gap exists in the Court of International Trade's exclusive jurisdiction for an action brought by an importer against the United States").

To the contrary, the CIT does not have exclusive jurisdiction over a civil action, like this one, arising out of an import transaction and commenced by the importer, rather than by the United States. The plain language of the statute compels this result, as the Federal Circuit held in *Trayco:*

> Section 1582 of Title 28 grants exclusive jurisdiction to the Court of International Trade over civil actions arising out of import transactions *commenced by the United States.* Trayco's action

against the government meets two of the three jurisdictional requirements of section 1582:(1) it is a civil action; (2) arising out of an import transaction. The United States, however, did not commence this lawsuit in the district court. We reject the government's argument that no jurisdictional gap exists because Congress failed in section 1582 to explicitly grant the Court of International Trade jurisdiction of civil actions arising out of import transactions *commenced by an importer.*

*Trayco,* 994 F.2d at 836–37 (emphasis in original).

In short, under the plain language of 28 U.S.C. § 1582, the CIT does not have exclusive jurisdiction over NMB's claims because the action was not commenced by the United States. As such, the district court has original jurisdiction over NMB's constitutional claims under § 1331.

None of this is to say that NMB will ultimately prevail. Indeed, serious questions remain concerning NMB's ability to prevail on its constitutional claims. Nor does this determine the manner in which the case will proceed-merely because the district court has jurisdiction does not mean that the district court could not stay the case pending resolution of the later-filed CIT action.[1] *See Mediterranean Enters., Inc. v. Ssangyong Corp.,* 708 F.2d 1458, 1465 (9th Cir.1983) (holding that it is within the discretion of a district court to enter a stay, regardless whether the parallel proceeding is "judicial, administrative, or arbitral in character" (quoting *Leyva v. Certified Grocers,* 593 F.2d 857, 863 (9th Cir.1979))). But whether NMB will win the jurisdictional battle and lose the war is a question for another day and for another court. We should reverse and remand to the district court on this issue.

---

1. One week after NMB filed its action in district court, the government filed suit against NMB in the CIT.