**Slip Op. 01-73**

**UNITED STATES COURT OF INTERNATIONAL TRADE**

UNITED STATES,

             Plaintiff,

        v.

NIPPON MINIATURE BEARING CORPORATION
and MINEBEA CO., LTD.,

             Defendants.

BEFORE: Pogue, Judge
Court No. 96-12-02853

[This slip opinion was previously issued as a memorandum opinion and order dated December 14, 2000.  It is being published as a precedential disposition pursuant to the Court's June 19, 2001, order granting Plaintiff's motion to publish.]

Decided: June 19, 2001

Stewart E. Schiffer, Acting Assistant Attorney General; David M. Cohen, Director; A. David Lafer, Senior Trial Counsel; Commercial Litigation Branch, Civil Division, United States Department of Justice (Michele D. Lynch); AnnMarie Highsmith, Office of the Chief Counsel, United States Customs Service, Of Counsel; and Jeffrey B. Whalen, Of Counsel, Attorney, Office of Regulations & Rulings, United States Customs Service, for Plaintiff.[*]

Coudert Brothers (Steven H. Becker, Robert L. Eisen, Paul A. Horowitz, Scott D. Schauf); Shaw Pittman (Jack McKay, Michele N. Tanaka), for Defendants.

---

[*]Ms. Lynch has in the meantime been substituted by Ada E. Bosque as the attorney of record for the Plaintiff in this action.  Ms. Lynch appears in the caption because she wrote the Plaintiff's motion to publish and represented the Plaintiff when the December 14, 2000 Memorandum and Order was issued.

OPINION

**Pogue, Judge:** The following Memorandum and Order is in response to Defendants' letter dated November 20, 2000, requesting pretrial rulings on specific issues briefed in the initial and supplemental pretrial memoranda, and in view of the parties' responses to the Court's December 5, 2000, request that the parties comment on how the Ninth Circuit's decision in <u>Nippon Miniature Bearing Corporation v. Weise</u>, 230 F.3d 1131 (9th Cir. (Cal.) 2000), affects the proceedings before this Court. The purpose of these rulings is to assist the parties in narrowing the issues for trial.

I.   The disclaimer in [Nippon Miniature Bearing ("NMB")] catalogs which reads as follows: "The company reserves the right to change the specifications and other information included in the catalog without notice."

During the time period relevant to this dispute, NMB's sales catalogs contained one of two disclaimers regarding changes to the products advertised in the catalogs. The disclaimer in its long-form catalogs distributed in 1986 and 1987 stated, "The company reserves the right to change specifications and other information included in this catalog without notice." <u>See</u> Def.'s Supp. Pretrial Mem. at 3, Annex A. The disclaimer in two short-form catalogs dated August 1988 stated, "Specifications and data subject to change without notice." <u>See</u> <u>id.</u> at 3 n.3, Annex A.

Defendants submit that "the disclaimers in [D]efendant NMB's catalogs effectively negate any alleged falsity in statements made by [D]efendants to the U.S. Customs Service ("Customs"), and thus

the Court should dismiss the [P]laintiff's case as [P]laintiff cannot satisfy this legal prerequisite for liability under 19 U.S.C. § 1592 [("Section 592")]." Def.'s Supp. Pretrial Mem. at 1-2. Defendants further argue that "from a 'materiality' standpoint, in view of the disclaimers, Customs cannot legitimately claim even to have been misled by the catalog into applying inadequate scrutiny to the bearings and their admissibility . . . ." Id. at 5. Plaintiff maintains, to the contrary, that "this language has no effect upon the Government's claims because the [D]efendants cannot disclaim their legal obligation to report accurate and complete information to Customs." Pl.'s Supp. Pretrial Mem. at 2.

As a preliminary matter, the Court notes that Defendant NMB, which issued the catalogs through its sales affiliate, first became aware of the substitution of DD for 440C steel in July, 1987. Consequently, the disclaimers contained in the August 1988 short-form catalogsßthat is, those catalogs issued after NMB became aware of the substitutionßcan have no effect on Defendants' liability.[1] A disclaimer reserving for the company the right "to change" specifications between publications of sales catalogs does not, by its language, reserve for the company the right to withhold, in any subsequent publication, changes of which the company is aware. See discussion of "400 series stainless steel" description infra.

The issue of the effect of the disclaimer in the long-form catalogs remains. The Court turns first to Defendants' claim that

---

[1]We note that Minebea, the parent company of NMB, was aware of the substitution during the entire period in dispute. We decline at this point to decide the Hitachi liability issue briefed by the parties.

the disclaimer negates any alleged falsity of its statements. Assuming, arguendo, that Plaintiff prevails at trial on its claim that the statements in the catalogs are statements made to Customs as part of Defendants' invoice, Defendants had an obligation under 19 U.S.C. § 1485(a)(4) to "produce to the appropriate customs officer any invoice, paper, letter, document or information received showing that such . . . statements are not true or correct." A disclaimer might be effective as a general notice to customers that the products offered in an advertisement may not be available in the exact form advertised. See Def.'s Supp. Pretrial Mem. at 4 (citing Norton Tire Co. v. Tire Kingdom Co., 858 F.2d 1533 (11th Cir. 1988)). A disclaimer is not, however, effective against the statutory obligation to inform Customs that a statement that was once true—here, that the bearings were composed of 440C—is no longer true.[2]

Moreover, the disclaimer does not prevent Plaintiff, as a matter of law, from proving materiality. Customs' regulation, 19 C.F.R. Part 171 App. B(A), provides that a statement "is material if it has the potential to alter the . . . admissibility of

_____

[2]The correctness of this conclusion is confirmed by the effect courts have found disclaimers to have in other contexts. For example, in contracts cases, a general disclaimer must yield to a specific obligation contained in the contract, if the two are inconsistent. See, e.g., Consolidated Data Terminals v. Applied Digital Data Systems, Inc., 708 F.2d 385, 391 (9th Cir. 1983)(applying New York law to find that, "[w]here a contract includes both specific warranty language and a general disclaimer of warranty liability, the former prevails over the latter where the two cannot be reasonably reconciled"). Similarly here, a general disclaimer concerning the truth of statements made must yield to the specific obligation contained in the statute to guarantee the truth of statements made to Customs. See 19 U.S.C. § 1845 (requiring importer to make a "declaration under oath" that all statements made are "true and correct").

merchandise . . . ."  19 C.F.R. Part 171 App. B(A) (1987).

Plaintiff bases its "materiality" claim on the argument that the

merchandise was potentially inadmissible due to a possible or

actual Lanham Act violation pursuant to 15 U.S.C. § 1125(a)

("Section 43(a)").  See Pl.'s Supp. Pretrial Mem. at 8.  In a case

involving another section of the Lanham Act, 15 U.S.C. § 1124, the

court explained that, "Although courts may also consider an alleged

infringer's use of a disclaimer . . . the mere presence of a

disclaimer does not necessarily prevent customer confusion."  Ross

Cosmetics Distribution Centers, Inc. v. United States, 18 CIT 979,

987 (1994).  A statement that results in "consumer confusion" is

also a ground for finding a violation of Section 43(a).  Thus,

whether or not the disclaimer would prevent a conclusion that the

statement was "literally false" under Section 43(a), a Customs

official could not, upon reading the disclaimer, conclude

definitively that the merchandise would not result in customer

confusion and thus, would be admissible.  This Court concludes that

the mere presence of the disclaimer does not, as a matter of law,

prevent Plaintiff from proving that Section 592 civil penalties are

owing.


II.  Customs' receipt of information in September 1987 indicating
     that NMB was importing bearings composed of material other
     than 440C steel.  Customs' June 1, 1998, seizure of documents
     discussing the use of "DD" steel in bearings marked with the
     "SS" part number.


Defendants imported the merchandise at issue between August 1,

1986, and February 27, 1989.  Defendants argue that there can be no

liability for a violation of Section 592 for at least part of that

period, because Customs had actual knowledge of the substitution of DD steel for 440C steel from September 1987 onward. See Def.'s Pretrial Mem. at 40. Defendants allege that Special Agent William Dean became aware of the use of DD steel in September 1987 from a Customs informant; despite this knowledge, "he took no action with respect to [D]efendants' bearings." See id. at 5 (¶ 11). Moreover, following a June 1988 raid of NMB's offices, during which Customs acquired more evidence of the substitution of DD steel for 440C steel, "Customs still took no action against [D]efendants' bearings until seizure in January and February 1989." Id. (¶ 11). According to Defendants, "Customs admitted millions of NMB bearings with knowledge that they were made of DD steel." Id. (¶ 12). The legal significance of Customs's knowledge, urge Defendants, is that it negates Plaintiff's theory of materiality: "once Customs learned that [D]efendants had substituted steel in their bearings, it cannot claim that it was somehow misled into not giving adequate scrutiny to the bearings in order to determine their admissibility." See id. at 40-41 n.23. More broadly, Defendants suggest that, in order to prosecute under Section 592, Plaintiff must point to "reliance by Customs on the allegedly false statement." Def.'s Pretrial Mem. at 41 n.24, and cites therein.

Defendants' legal theory is incorrect. "Materiality" for purposes of Section 592 is determined without regard to whether the importer's false statement to Customs actually misled Customs, or whether Customs actually relied on the false statement. See 19 C.F.R. Part 171 App. B(A)(a statement "is material if it has the potential to alter the . . . admissibility of merchandise . . . or

if it <u>tends</u> to conceal an unfair trade practice . . . .")(emphases added); <u>United States v. Daewoo International</u>, 12 CIT 889, 894, 696 F. Supp. 1534, 1540 (1988), <u>vacated on other grounds</u>, 13 CIT 76, 704 F. Supp. 1067 (1988)(false statements are material if they have "a natural <u>tendency</u> to influence, or [were] <u>capable</u> of influencing, the decision of [Customs] in making a determination required to be made")(emphases added)(cites omitted); <u>United States v. Holmquist</u>, 36 F.3d 154, 161 (1st cir. 1994)(the focus of an inquiry into materiality is not what effect a false statement actually may have, but whether it has "the <u>potential</u> significantly to affect the integrity or operation of the importation process as a whole")(emphasis added). This approach is in accord with the fundamental principle that the burden is on the importer to provide true and accurate information to Customs; the burden is not on Customs to "find out" non-complying importers. That Customs may have known that NMB made false statements to Customs does not make the statements either true or accurate, nor does it make the statements not "material" as that term has been interpreted.

III. NMB's distribution, in August 1988, of a catalog indicating that bearings with "SS" part numbers were made from 400 series stainless steel (as opposed to 440C steel as stated in earlier catalogs).

Defendants further argue that there can be no liability for a violation of Section 592 after August, 1988. At that time, NMB issued a revised short-form catalog indicating that bearings with "SS" part numbers were made from a "400 series stainless steel." <u>See</u> Def.'s Pretrial Mem. at 41. The legal significance of this

revision, according to Defendants, is that it remedied any possible violation of the Lanham Act by indicating to Customs that the bearings were <u>not</u> made of 440C steel.  <u>See</u> <u>id.</u> at 41-42.

Defendants' argument cannot be accepted.  First, as 440C is itself a "400 series stainless steel" pursuant to AISI standards, Defendants simply cannot maintain that Customs should have known from the catalog revision that the bearings were not composed of 440C.  And even if Customs should have known that the bearings were <u>not</u> made of 440C, Customs could not have known from the description "400 series stainless steel" that the bearings <u>were</u> made of DD.  Moreover, it is uncontested that DD is not recognized by the AISI, <u>see</u> Second Amended Pretrial Order, Stmt. Uncontested Facts at ¶ 73; thus, it is in a strict sense not true that DD is a "400 series stainless steel," even if DD in fact meets the AISI criteria for that series.  In sum, the description "400 series stainless steel" does not by itself extinguish the possibility that Defendants violated the Lanham Act.[3]

IV.  The effect of the Ninth Circuit's decision in <u>Nippon Miniature Bearing Corporation v. Weise</u>, 230 F.3d 1131 (9th Cir. (Cal.) 2000), on the proceedings before this Court.

In a letter dated December 5, 2000, the Court asked the parties to address the Ninth Circuit's decision in <u>Nippon Miniature Bearing Corporation v. Weise</u>, 230 F.3d 1131 (9th Cir. (Cal.) 2000)

---

[3]In <u>Pacamor Bearings, Inc. v. Minebea Co., Ltd.</u>, 918 F. Supp. 491, 503 n.14 (D.N.H. 1996), the district court noted the possibility that the representation "400 series stainless steel" could be, if not "literally false," "susceptible to the alternate § 43(a) prong of 'consumer confusion.'"

("NMB"). Specifically, the Court noted that the Ninth Circuit distinguished between jurisdiction over claims related to Customs' penalty assessment, and claims related to seizure. The Court asked the parties to consult, and comment on how the Ninth Circuit's opinion affects the proceedings at this Court.

In its comments of December 7, 2000, Plaintiff informed the Court that the parties had consulted, and were unable to reach agreement. See Pl.'s Comments at 1. The United States reiterated its position "that the CIT has jurisdiction over the 926 entries listed on Exhibit A to the Complaint but that it lacks jurisdiction over the [D]efendants' counterclaim which arises solely from the nineteen shipments that were seized by Customs and which are not included within the 926 entries." Id. In its comments of December 12, 2000, Defendants, without indicating agreement with Plaintiff's position, did, however, decide "to voluntarily withdraw [the counterclaim related to the nineteen shipments of seized ball bearings] in order to narrow the issues for trial." Def.'s Comments at 2. The Court has reviewed Defendants' amended schedules to the Pretrial Order, and will approve these amendments.


**IT IS SO ORDERED.**


Donald C. Pogue
Judge


Dated:     June 19, 2001
           New York, New York