**Byung Wu LEE, Plaintiff–Appellant,**

**v.**

**UNITED STATES, Defendant–Appellee.**

**No. 02–1404.**

United States Court of Appeals,
Federal Circuit.

May 12, 2003.
Rehearing Denied June 5, 2003.

Peter S. Herrick, of Miami, FL, argued for plaintiff-appellant.

Arthur J. Gribbin, Attorney, Commercial Litigation Branch, Civil Division, International Trade Field Office, Department of Justice, of New York, NY, argued for defendant-appellee. With him on the brief were David M. Cohen, Director, Commercial Litigation Branch, Civil Division, Department of Justice, of Washington, DC; and John J. Mahon, Acting Attorney in Charge, International Trade Field Office, of New York, NY. Of counsel on the brief was Joanne Halley, Attorney, Office of Associate Chief Counsel, United States Customs Service, of Long Beach, CA.

Harvey A. Isaacs, Tompkins & Davidson, LLP, of New York, NY, for amicus curiae. Of counsel was Daniel F. Shapiro.

Before MAYER, Chief Judge, MICHEL and CLEVENGER, Circuit Judges.

CLEVENGER, Circuit Judge.

Mr. Lee was a licensed customs broker who failed to timely pay two monetary penalties assessed by the United States Customs Service ("Customs"). Customs then revoked Mr. Lee's license under 19 U.S.C. § 1641(d)(1)(C) for violations of Customs regulations requiring the timely payment of debts. Mr. Lee appealed to the Court of International Trade, which denied his motion for judgment on the administrative record and affirmed the decision revoking his license. *Lee v. United States*, 196 F.Supp.2d 1351 (Ct. Int'l Trade 2002). We affirm.

I

On August 16, 1990, Customs issued Mr. Lee a Notice of Intent to Issue Monetary Penalty, informing him that Customs was contemplating issuing a $1000 penalty for

"[f]ailure to exercise responsible supervision and control over Customs business conducted." Mr. Lee responded to the notice, arguing that no penalty should be due. Customs rejected Mr. Lee's arguments and issued a $1000 penalty notice on January 15, 1991. After Mr. Lee requested "administrative relief" from the penalty, Customs determined that a penalty was still due but mitigated the amount to $250. Customs sent several demand letters to Mr. Lee for payment, but he did not respond. In January 1993, Customs turned the matter over to the Justice Department for collection, at which point Mr. Lee paid the $250 penalty.

On December 7, 1992, Customs issued Mr. Lee another Notice of Intent to Issue Monetary Penalty, notifying him that Customs was considering issuing a $30,000 penalty for violations of various statutes and regulations. Mr. Lee never responded to this notice, and Customs issued a $30,000 penalty notice on January 12, 1993. This became a final penalty determination in the absence of any response from Mr. Lee. Customs again sent several demand letters to Mr. Lee, who still failed to respond. In the final demand letter, Customs notified Mr. Lee that if he failed to respond, "not only will we forward the outstanding penalty for collection, but we will consider taking action against your license." Customs then forwarded the matter to the Justice Department for collection, and the Justice Department brought suit in the Court of International Trade in August 1995 to collect payment. The parties later stipulated to the dismissal of this collection action.

At the same time the Justice Department brought its collection action, Customs commenced preliminary proceedings to revoke Mr. Lee's broker's license. On December 27, 1995, Customs issued Mr. Lee a Notice of Preliminary Proceedings and Proposed Notice to Show Cause ("Proposed Notice") containing two specifications notifying Mr. Lee of the charges against him. The main charge was violation of 19 C.F.R. § 111.53(c), which provided for revocation of a broker's license when the "broker has violated any provision of law enforced by Customs or the rules or regulations issued under any such provision." 19 C.F.R. § 111.53(c) (1995). Specification I dealt with Mr. Lee's failure to tender timely payment of the original $250 penalty within 60 days of the final determination, a violation of 19 C.F.R. §§ 111.29 and 111.94.[1] Specification II dealt with Mr. Lee's failure to pay the $30,000 penalty within 60 days of the final determination, a violation of the same regulations. Mr. Lee responded to the Proposed Notice by arguing that Specification I was barred by the statute of limitations and that Specification II was "covered" by the collection action. Mr. Lee later submitted another response, arguing that Customs could not seek license revocation on the same facts on which it was pursuing its collection action because the monetary penalty and license revocation were alternative sanctions.

On August 13, 1996, Customs issued a formal Notice of Revocation Proceeding and Notice to Show Cause and Statement of Charges, repeating the charges from

---

1. At all times relevant to this litigation, section 111.29 required that "[p]ayment of a duty, tax, or other debt or obligation owing to the Government for which the broker is responsible ... must be made to the Government on or before the date that payment is due." 19 C.F.R. § 111.29 (1993).

Section 111.94 provided, "If the final determination is that the person is liable for a monetary penalty, the person shall pay, or make arrangements for payment, within 60 days of the date of the final determination." *Id.* § 111.94.

the Proposed Notice. A license revocation hearing was held before an Administrative Judge on September 11, 1996. The Administrative Judge rejected Mr. Lee's arguments and concluded that Customs had proven its charges that Mr. Lee had twice violated 19 C.F.R. §§ 111.29 and 111.94. Therefore, the Administrative Judge recommended that Mr. Lee's license be revoked.

The Secretary of the Treasury adopted the Administrative Judge's recommendation and revoked Mr. Lee's license, explaining that the license revocation rested on facts different than those for which the penalties were actually assessed and that the failure to pay the penalties in a timely manner was a separate violation. Mr. Lee then appealed to the Court of International Trade, which affirmed the revocation decision. *Lee,* 196 F.Supp.2d at 1367.

Mr. Lee now appeals the Court of International Trade's decision to this court, and we have jurisdiction pursuant to 28 U.S.C. § 1295(a)(5).

## II

■ This case involves issues of statutory interpretation, which is a question of law subject to de novo review. *U.S. Steel Group v. United States,* 225 F.3d 1284, 1286 (Fed.Cir.2000).

■ Mr. Lee first argues that, under 19 U.S.C. § 1641(d), Customs must make the choice to either issue a monetary penalty or seek revocation of a broker's license and cannot do both for the same violation. The relevant language of section 1641 provides, "The Secretary may impose a monetary penalty in all cases ..., *or* revoke or suspend a license or permit of any customs broker, if it is shown that the broker ... has violated any provision of law enforced by the Customs Service or the rules or regulations

issued under any such provision." 19 U.S.C. § 1641(d)(1) (1994) (emphasis added). Also, a note in Appendix C to Part 171 of the Code of Federal Regulations states, "Assessment of a monetary penalty is an alternative sanction to revocation or suspension of a broker's license or permit." 19 C.F.R. Pt. 171, App. C note (1993). It is clear that Congress intended revocation and monetary penalties to be alternative sanctions under section 1641, and the regulatory scheme recognizes this. However, they are alternative sanctions for a single violation. The question presented here is whether there is a single violation or whether the violation giving rise to the penalties and the violation resulting from failure to pay the penalties may appropriately be considered separate violations.

Mr. Lee argues that there are two single violations at issue here—the $250 and $30,000 penalty incidents—and Customs cannot revoke his license because it already issued the monetary penalties. The government argues that the violations for which the penalties were assessed are separate from the violations at issue here, which are Mr. Lee's failure to timely pay the assessed penalties. The Court of International Trade agreed with the government, stating that "[t]he violations at issue in the revocation proceeding were Mr. Lee's failures to timely pay assessed penalties—*not* the underlying violations which resulted in those penalties." *Lee,* 196 F.Supp.2d at 1360. Indeed, the failure to pay a debt in a timely manner is a violation of 19 C.F.R. §§ 111.29 and 111.94, different regulations from the regulations that led to the initial penalty assessments. This is not a case like *SEC v. Sloan,* 436 U.S. 103, 98 S.Ct. 1702, 56 L.Ed.2d 148 (1978), where the Securities and Exchange Commission imposed numerous successive ten-day suspensions of trading based on a single "manipulative scheme." *Id.* at 110–

11, 98 S.Ct. 1702. The Supreme Court found those successive suspensions to be improper, but distinguished the case from one in which a second violation is discovered. *Id.* Unlike *Sloan,* this case involves two classes of violations, violations giving rise to the penalties and violations arising from failure to pay on time.

■ The regulations clearly make the failure to pay a penalty on time an independent violation for which Customs may seek license revocation under 19 C.F.R. § 111.53(c). However, the amicus brief filed on Mr. Lee's behalf argues that Customs went beyond its statutory authority in promulgating regulations that authorize it to revoke a broker's license for failure to pay a penalty within a timely manner. Congress has delegated authority to Customs to prescribe regulations "relating to the customs business of customs brokers as the Secretary considers necessary to protect importers and the revenue of the United States." 19 U.S.C. § 1641(f) (1994). In promulgating 19 C.F.R. § 111.53, a regulation that authorizes Customs to revoke a broker's license for violations of other Customs regulations, including regulations such as 19 C.F.R. §§ 111.29 and 111.94 that require timely payment of penalties and other debts, Customs has acted reasonably and within the realm of authority granted to it by Congress. Also, while it may be contrary to section 1641(d)'s use of the term "or" to authorize both a penalty and license revocation or suspension for a single violation, that is not what Customs has done here. Nothing in section 1641(d) precludes the promulgation of regulations that make the failure to pay a penalty in a timely manner a separate violation from the violation underlying the initial imposition of the penalty.

■ Mr. Lee's second argument is that if Customs may revoke a broker's license for failure to pay an assessed penalty in a timely manner, it operates to impede the broker's right to judicial review. He contends that Customs' regulations leave a broker with an unacceptable choice—pay the penalty and lose the chance for judicial review or face license revocation for failure to pay in order to preserve judicial review. However, the straits are not as dire as Mr. Lee contends. A broker does have the right to judicial review of penalty determinations. *See* 19 U.S.C. § 1641(e) (1994); *United States v. Ricci,* 985 F.Supp. 125, 126–27 (Ct. Int'l Trade 1997). But the system set out in the regulations and Customs' policies give the broker options that do not require him to subject himself to revocation proceedings to preserve his right to appeal the penalty determination. For example, Mr. Lee could have chosen to pay the penalty under protest to preserve his right to appeal to the courts. *See Trayco, Inc. v. United States,* 994 F.2d 832, 835 (Fed.Cir.1993). Customs also has a policy that would have spared Mr. Lee from revocation proceedings if he had raised factual and legal challenges to the penalties and actively contested them throughout the entire administrative process. Under this policy, unpaid penalties may be considered as the basis for license revocation, but Customs' policy is not to institute revocation "proceedings against a broker who actively contests a monetary penalty by raising legal or factual issues in an appropriate forum." Customs Directive No. 099 3530–007 (Aug. 11, 1992), *quoted in Lee,* 196 F.Supp.2d at 1364.

In the first penalty proceeding, Mr. Lee initially contested the penalty's legality, but, ignoring the subsequent demand letters, he stopped responding to Customs' communications after the final determination of a $250 penalty. In the second penalty proceeding, Mr. Lee never responded to Customs at all. If he had

chosen to abide by Customs' policy rather than remaining silent during all or part of the penalty proceedings, he would not have subjected himself to revocation proceedings for failing to pay the penalties in a timely manner but would have preserved his right to appeal the penalty determination. The regulations that allow license revocation for failure to pay a penalty on time did not impede his right to judicial review of the penalty determination; he simply chose not to exercise his options.

Finally, Mr. Lee argues that a penalty assessed against a broker is not a duty imposed by law and therefore not a "debt or obligation" for purposes of 19 C.F.R. § 111.29. Section 111.29 provided that "[p]ayment of duty, tax, or other obligation owing to the Government for which the broker is responsible ... must be made to the Government on or before the date that payment is due." 19 C.F.R. § 111.29 (1993). If the penalty does not qualify as a "debt or obligation," there was no violation of section 111.29 for failure to pay.

Mr. Lee argues that, based on *Nippon Miniature Bearing Corp. v. Weise*, 230 F.3d 1131 (9th Cir.2000), the penalty that Customs assessed on him was not a "debt or obligation" until he had full opportunity for judicial review. In *Nippon Miniature Bearing*, the Ninth Circuit determined that Customs' assessment of a penalty against an importer under section 1592 is not a final agency action because it does not determine the rights and liabilities of the parties, and no legal consequences flow from it. *Id.* at 1137. Because of the lack of finality, the Ninth Circuit held that the district court did not have jurisdiction over the importer's pre-enforcement challenge to the penalty assessment. *Id.* at 1137–38. The court found that there is no requirement that an importer pay an assessed penalty during the administrative review stages of a proceeding, instead concluding

that the obligation to pay "only arises after the CIT conducts a de novo review of all issues in a government initiated enforcement proceeding and determines whether a penalty is due and the amount of any such penalty." *Id.* at 1137.

Although we are not bound by Ninth Circuit precedent, we do not think the *Nippon* decision would compel a decision in Mr. Lee's favor in any event. The Ninth Circuit did not hold in *Nippon* that judicial review is required before an agency can take a step such as seeking license revocation for failing to pay a penalty within a specified period. The Ninth Circuit's reasoning suggests that there may be a problem if an importer or broker was forced to pay a penalty to avoid facing revocation but was then deprived of the opportunity for judicial review of that penalty. However, that is not the case here, as discussed above. Customs' policy permits a party to avoid the payment of a penalty before the penalty determination becomes "final agency action" without the threat of legal consequences as long as the party makes factual or legal arguments to contest the legality of the penalty throughout the review process.

 Customs has interpreted the phrase "debt or obligation" in 19 C.F.R. § 111.29 to include monetary penalties. A great amount of deference is owed to an agency's interpretation of its own regulations. *See Am. Express Co. v. United States*, 262 F.3d 1376, 1382 (Fed.Cir.2001) (stating that "[t]he Supreme Court has firmly established that agency interpretations of their own regulations are entitled to substantial deference"). The Supreme Court has stated that an agency's interpretation is given "controlling weight unless it is plainly erroneous or inconsistent with the regulation." *Bowles v. Seminole Rock & Sand Co.*, 325 U.S. 410, 414, 65 S.Ct. 1215, 89 L.Ed. 1700 (1945). It is not plainly erroneous for Customs to interpret the

term "debt or obligation" to include a penalty imposed by the agency rather than only including those penalties after they have received full judicial review.

## CONCLUSION

Mr. Lee has not shown us that it was improper for Customs to revoke his license. It was not contrary to section 1641(d) because the license was revoked for failing to pay penalties in a timely manner, not as a second sanction for the violations for which the penalties were assessed. The regulations that allow the revocation of a broker's license for failure to make on-time payment of a penalty are properly within the agency's authority and have not been interpreted in a way that is plainly erroneous. Therefore, we affirm the Court of International Trade's decision upholding the revocation of Mr. Lee's broker's license.

*AFFIRMED.*