Slip Op. 05-114

## UNITED STATES COURT OF INTERNATIONAL TRADE

| | | |
|---|---|---|
| | x | |
| Essar Steel, Ltd. | : | |
| Plaintiff, | : | |
| | : | **Court No. 04-00239** |
| v. | : | **Before: Judith M. Barzilay, Judge** |
| | | **Public Version** |
| United States | : | |
| Defendant | : | |
| and | : | |
| United States Steel Corporation, | : | |
| Defendant-Intervenor. | : | |
| | x | |

## OPINION

[Plaintiff's USCIT R. 56.2 Motion for Judgment Upon the Agency Record denied.]

Decided: August 30, 2005

*Coudert Brothers, Kay C. Georgi, Esq.,* (*Mark P. Lunn, Esq.*) for Plaintiffs.

*Peter D. Keisler*, Assistant Attorney General, *David M. Cohen*, Director, *Jeanne E. Davidson*, Deputy Director, (*David D'Alessandris*), Trial Attorney, U.S. Department of Justice, Commercial Litigation Branch, Civil Division; *Marisa Beth Goldstein*, Office of the Chief Counsel for Import Administration, U.S. Department of Commerce, of counsel, for Defendant.

*Skadden, Arps, Slate, Meagher & Flom LLP, Robert E. Lighthizer, John J. Mangan*, (*Jeffrey D. Gerrish*), for Defendant-Intervenor.

BARZILAY, JUDGE:

Before the court is plaintiff Essar Steel Ltd.'s ("Essar's") USCIT Rule 56.2 Motion for

Judgment Upon the Agency Record, contesting certain determinations made by the Department

of Commerce, International Trade Administration ("Commerce" or "the government") in *Certain*

*Carbon Steel Flat Products from India: Notice of Final Results of Countervailing Duty Administrative Review*, 69 Fed. Reg. 26,549 (May 13, 2004) ("*Final Results*"). Essar argues that Commerce's findings, that a Government of India ("GOI") export promotion credit program conferred a benefit upon Essar, were unsupported by the record. Because this court finds that a benefit was conferred upon Essar when it received credits pursuant to the program, and that there is no evidence on the record that Essar withdrew from the program or returned its credits during the period of review[1] ("POR"), for the reasons stated herein, plaintiff's motion is denied.

## I.      Background

Plaintiff challenges Commerce's decision to countervail the application of the Duty Entitlement Passbook Scheme ("DEPS") program to its shipment of the subject merchandise to the United States during the applicable period of review. Under the DEPS, a company exporting goods would earn credits from the GOI that exempt it from the payment of customs duties on imports. Operating under this program, Essar processed a single shipment of product to the United States during the POR, and accordingly earned credits. Essar argued before the agency that this shipment was mistakenly processed, and that it took affirmative steps to neutralize or reverse any benefit that may have been conferred by the GOI.

Commerce initiated an administrative review of a countervailing duty order on certain hot-rolled carbon steel flat products from India, upon Essar's timely request. *See Initiation of Antidumping and Countervailing Duty Administrative Review and Requests for Revocation in Part*, 68 Fed. Reg. 3009 (Dept. Commerce Jan. 22, 2003) (Public Record ("PR") at 258). In

---

[1]   The POR in this case was from April 20, 2001 to December 31, 2002.

response to Commerce's Countervailing Duty Questionnaire, Essar initially claimed that it did not use the DEPS during the period of review ("POR"), but subsequently acknowledged that it had mistakenly processed one shipment of the subject merchandise to the United States under the DEPS. *See* Essar's Response to the Department's Countervailing Duty Questionnaire (April 4, 2003) (PR at 271). After Essar realized that it had made such a shipment, in a letter to the Indian Directorate General of Foreign Trade ("DGFT"), Essar requested that the GOI switch its shipment to the Duty Free Replenishment Certificate program ("DFRC"), an alternative to DEPS. The DGFT responded by directing Essar to take certain action.

During the following October and November, Commerce conducted verification of Essar in India. At verification, Commerce confirmed that companies may switch between export programs as long as no benefits have been claimed, and further that "[Essar] did not use a DEPS credits license on sales of subject merchandise to the United States during the POR." *See* Memorandum from Tipten Troidl et. al., in *Certain Hot-Rolled Carbon Steel Flat Products from India*, at 5-6, Inv. No. C-533-821 on the Verification Responses Submitted by Essar Steel, Ltd. (Dept. Commerce Dec. 8, 2003) ("*Essar Verification Report*") (PR at 339).

On May 13, 2004, Commerce published the final results of its countervailing duty review. *See Final Results*, 69 Fed. Reg. 26,549. In its *Final Results*, Commerce found that Essar earned a credit under the DEPS on the shipment of the subject merchandise to the United States in 2002, and that this provided a countervailable financial contribution which conferred a benefit at the time of exportation and was specific. *Id.* Commerce also found that Essar's steps towards withdrawal from the DEPS program did not constitute a payback that extinguished any benefit

conferred upon Essar.

**II.     Analysis**

This court has jurisdiction pursuant to 28 U.S.C. § 1581(c).  Commerce's determination must be affirmed unless it is "unsupported by substantial evidence on the record, or otherwise not in accordance with law."  19 U.S.C. § 1516a(b)(1)(B) (2000).  Substantial evidence is defined as "more than a mere scintilla.  It means such relevant evidence as a reasonable mind might accept as adequate to support a conclusion."  *Matsushita Elec. Indus. Co., Ltd. v. United States*, 750 F.2d 927, 933 (Fed. Cir. 1984) (citation omitted).  Under the substantial evidence standard of review, the court must sustain Commerce's determination if it is reasonable and supported by the record evidence as a whole.  *See Hyundai Elecs. Co., Ltd. v. United States*, 23 CIT 302, 53 F. Supp. 2d 1334, 1338 (1999).

Essar argues that Commerce's findings, that the DEPS provided a financial contribution and conferred a benefit on Essar, are not supported by substantial evidence on the record and are not otherwise in accordance with the law.  Essar bases this argument on the fact that it never "used" its DEPS credits, and the claim that it switched those credits to another non-countervailable export program.  Essar argues in the alternative that it withdrew from the DEPS program, and that this constituted a payback that extinguished any benefit conferred upon Essar.

**A.     Whether DEPS provided a financial contribution and conferred a benefit upon Essar**

**1.     Financial Contribution**

A "financial contribution" is conferred when a government foregoes or does not collect revenue that is otherwise due, such as by granting tax credits or deductions from taxable income.

19 U.S.C. § 1677(5)(D)(ii). In the present case, Essar processed one shipment of the subject merchandise to the United States during the POR under the DEPS program, and the GOI accordingly provided Essar with credits for the future payment of import duties. Commerce verified, and Essar does not dispute, that "the DEPS program enables exporting companies to earn import duty exemptions in the form of passbook credits rather than cash." *Preliminary Results*, 69 Fed. Reg. at 912 (PR at 912). Furthermore, "DEPS credits can be used for any subsequent imports, regardless of whether they are consumed in the production of an export product," and "the credits are valid for twelve months and transferable." *Id. See also Issues and Decision Memorandum*, at 13 (PR at 13) ("an important aspect of the DEPS program is that these licenses can be sold or traded for value"). Because Essar was granted credits for its shipment under the DEPS program, Essar received a financial contribution from the Government of India.

### 2. Benefit

Essar argues that because it never "cashed in" its credits, it never received a benefit from this financial contribution. Essar repeatedly cites to Commerce's statement in its verification report that "we confirmed that the company did not use a DEPS license on sales of subject merchandise to the United States during the POR." *Essar Verification Report*, at 7 (PR at 339). Commerce explained that "the quoted passage simply means that Essar had not claimed any imports against the shipment" – that although Essar received credits, it never utilized them for the payment of import duties. *Final Results*, Issues and Decision Memorandum, Comment 2, at 13 (PR at 375). Commerce explained that benefits from the DEPS program are conferred as of the date of exportation of the shipment for which the pertinent DEPS credits are earned rather

than the date the DEPS credits are used. Essar challenges this calculation on an "as earned" basis, and argues that Commerce should have calculated using an "as received" methodology. Commerce's regulations provide that it normally will consider a benefit as having been received, but in cases of an exemption – as in the case at hand – it will consider a benefit as having been received on the date of exportation. 19 C.F.R. § 351.519(b)(2). Seizing upon the word "normally" in the regulation, Essar argues that because it did not use a DEPS license on sales of subject merchandise to the United States during the POR, it rebutted the presumption in favor of calculating benefits on an "as earned" basis.

Even under Essar's interpretation of the section 351.519(b)(2), reading the word "normally" to imply a case-by-case approach where Commerce could deviate from its "normal" practice of calculating benefits on an "as earned" basis, it is clearly within Commerce's discretion when and under what circumstances to do so. That Commerce exercised its discretion not to deviate from its "normal" practice in this case does not mean that its methodology did not accurately reflect any benefit conferred. *Compare Al Tech Specialty Steel Corp., et. al. v. United States*, Slip Op. 04-114 (Sept. 8, 2004). As defendant-intervenor points out, Commerce has consistently calculated the benefit from a duty exemption program on an "as earned" basis in cases where it is provided as a percentage of the value of the exported merchandise on a shipment-by-shipment basis, and where the exact amount of the exemption is known at the time of export. *See Certain Cut-to- Length Plate From India*, 64 Fed. Reg. 73131, 73140 (Dep't Commerce Dec. 29, 1999) (final determ.); *Certain Welded Carbon Steel Pipe and Tube and Welded Carbon Steel Line Pipe From Turkey*, 63 Fed. Reg. 18885, 18888 (Dep't Commerce Apr.

16, 1998 (final results); *Cotton Shop towels from Pakistan*, 61 Fed. Reg. 50273, 50275 (Dep't Commerce Sept. 25, 1996) (prelim. results). Essar argues that unique circumstances in this case, which Essar argues establish that it was able to complete a withdrawal from the DEPS program, mandate that Commerce deviate from its normal practice. As discussed below, however, the court is not persuaded that Essar effectuated this withdrawal within the POR. Furthermore, that Essar mistakenly processed its shipment under the DEPS program does not mandate a different outcome. An agency's interpretation of its own regulations is entitled to substantial deference. *Lee v. United States*, 329 F.3d 817, 822 (Fed. Cir. 2003). Additionally, neither the relevant statute nor the regulations require Commerce or this court to investigate the motivations or intentions behind Commerce's actions. Thus, Essar has not established any basis for overturning Commerce's decision to calculate any benefit received by Essar on an "as earned" basis, in accordance with its normal practice. Commerce correctly determined that because Essar earned DEPS credits program by processing its shipment of the subject merchandise to the United States under this program, it obtained a financial contribution. Additionally, because Commerce acted within its discretion to calculate the benefit earned from this financial contribution on an "as earned" basis, Commerce correctly determined that Essar obtained a benefit.

Essar also argues that Commerce's determination of the benefit from the DEPS on an "as earned" basis is not consistent with the U.S. statute and legislative history underlying the statute, and that it is further inconsistent with the WTO "benefit to the recipient" standard. Essar asserts that 19 U.S.C. § 1677(5)(E) provides for an analysis of the timing of the benefit of a subsidy, thereby allowing Commerce to determine the benefit in this case on an "as received" rather than

an "as earned" basis. As defendant-intervenor points out, however, the legislative history of section 1677(5)(E) indicates that this section "provides the standard for determining the existence and amount of a benefit conferred through the provision of a subsidy." H.R. Rep. 108-826 at 109 (1994). Neither the statute nor the legislative history mentions the timing of the benefit from a subsidy. Commerce has filled this gap through its regulations, such as section 351.519(b)(2), and its practice.

Essar also contends that Commerce's determination, finding that a benefit was conferred, does not satisfy the "benefit to the recipient" standard of the WTO Agreement on Subsidies and Countervailing Measures ("SCM Agreement"). Essar points to Article 14 of the SCM Agreement, which states that no benefit exists without the receipt of an advantage by comparison with the market. As both Essar and defendant-intervenor point out, the WTO Appellate Body found that the ordinary meaning of "benefit" encompasses some form of an "advantage" and "favorable or helpful factor." *Canada – Measures Affecting the Export of Civilian Aircraft*, WT/DS70/AB/R at ¶ 156 (Aug. 2, 1999). Essar thus argues that because it requested GOI approval to have its U.S. shipment transferred from the DEPS program to the DFRC and that it never utilized its DEPS credits, it was not advantaged. As discussed above, however, the fact that Essar obtained DEPS credits usable towards future imports indicates that it gained a benefit. Essar could have used the credits or traded them at any time in the future. Furthermore, as discussed below, no record evidence exists to suggest that Essar's request to transfer from the DEPS program to the DFRC program was ever granted or effectuated by the GOI.

**B.** **Whether Essar effectuated a payback by withdrawing from the DEPS program**

Essar argues in the alternative that Commerce's determination that Essar failed to extinguish any benefits earned from its participation in the DEPS program by withdrawing and transferring to the DFRC program, was unsupported by substantial evidence and not in accordance with the law. In essence, Essar argues that record evidence establishes that it accomplished the transfer, thereby extinguishing any benefits that may have been conferred under the DEPS program.

Arguing that it extinguished any benefit conferred by the DEPS program, Essar points to actions it took subsequent to processing its DEPS application. On April 23, 2003, Essar requested that the GOI take certain action. *See Essar Verification Report*, Verification Exhibits, Exhibit 7 (Confidential Record ("CR") at 339). On May 21, 2003, the GOI gave Essar directions regarding its request. *See id.* Finally, on October 17, 2003 Essar followed the GOI's directions. *See id.* Essar also points out that Commerce verified that "it is possible to switch programs as long as no exports have been claimed against the license." *Id.* at 5 (PR at 339). Taken together, Essar argues that this sequence of events establishes conclusively that it accomplished a payback by (1) not using the DEPS license in sales of subject merchandise to the United States and (2) requesting a GOI transfer to the DFRC program.

According to Commerce's established practice, prior subsidies can be eliminated by subsequent events under certain circumstances. *See Pure Magnesium from Israel*, 66 Fed. Reg. 49351 (Dept. Commerce Sept. 27, 2001) (final determ.); *Pure Magnesium and Alloy Magnesium from Canada*, 57 Fed. Reg. 30946 (Dept. Commerce July 13, 1992) (final determ.); *Certain*

*Computer Aided Software Engineering Products from Singapore*, 55 Fed. Reg. 12248 (Dept. Commerce Apr. 2, 1990) (final determ.). Those circumstances, however, have not been established in this case. Specifically, there is no indication that any action was taken within the POR by the GOI in response to Essar's request for transfer. Essar's April 23 letter merely requested a transfer. The DGFT's May 21 response only directed Essar to approach the Indian Customs for one action. Essar's Ver. Exhibit 7 (CR at 339). As defendant-intervenor correctly argues, a mere request to transfer the DEPS credits cannot constitute repayment or extinguishment of the financial contribution and benefit from those credits. Essar itself admits that the record does not contain a letter of approval by Indian Customs of its transfer request. *Reply Brief in Support of Pl's R. 56.2 Mot. for Judgment on the Agency Record* at 4.

At oral argument, counsel for Essar directed the court's attention to correspondence from the GOI purportedly indicating that it had granted Essar's request to withdraw from the DEPS program and transfer to the DFRC program. This court's review, however, is limited to the record before it. While the court is cognizant of the difficulties faced by importers in dealing with government bureaucracies on the one hand, and strictly defined periods of review on the other, the fact remains that pursuant to 19 C.F.R. §§ 351.519(c) and 351.524(a), recurring benefits are allocated in the year they are received. Thus, a party cannot repay a recurring subsidy after the period of review has ended. Unfortunately for plaintiff, no record evidence exists demonstrating that Essar effectuated a withdrawal from the DEPS program and conversion to the DFRC program. Commerce correctly determined that Essar failed to accomplish a payback of the benefits conferred under the DEPS program.

Therefore, it is hereby

ORDERED that plaintiff's motion for judgment on the agency record is denied.

August 30, 2005                                    /s/ Judith M. Barzilay

_____                    _____
New York, NY                                    Judith M. Barzilay, Judge